JUAN LUIS BOSCIO, Plaintiff and Appellant, v. SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 12567. Decided January 26, 1962.

398

*Córdova & González* and *Jorge L. Córdova, Jr.,* for appellant. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Stanley R. Segal, Assistant Secretaries of Justice,* and *Marcos Feliciano Crespo* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 50 of July 1, 1938, executed before Notary Felipe Colón Díaz, there was constituted a special mercantile partnership known as Monllor y Boscio, Sucesores, *S. en C.,* with a capital stock of $223,179.74, of which $176,185.96 corresponded to the only managing partner, Juan Luis Boscio. Four years later, on September 21, 1942, the appellant and his wife, Herminia Monllor, by public deed No. 73 executed before Notary Diego Guerrero Noble, transferred,

with retroactive effect to July 1, to certain trusts constituted in favor of their children, three shares of $44,046.49 each, or a total of $132,139.47, out of the capital stock corresponding to them in the said partnership. As part of a reorganization plan, on October 31, 1942 the partnership transferred most of its assets and business to a corporation organized under the name of Monllor y Boscio, Sucrs., Inc. It received 4,352.83 common shares which were distributed among the partners in proportion to their share in the capital stock. Sixty per cent of the shares corresponded to trustee Enrique Petrovich Boscio.

In the years 1945 to 1951, the trustee received income as follows:

| 1945: | $9,681.41 | 1948: | $10,290.30 |
|-------|-----------|-------|------------|
| 1946: | 4,647.42 | 1949: | 742.84 |
| 1947: | 293.40 | 1950: | 927.32 |
| | | 1951: | $8,871.38 |

Out of these sums the trustee distributed among the beneficiaries $4,800, $2,400, and $2,400 in 1945, 1946, and 1948. He withheld the balance of the income pursuant to the terms of the trust and paid the corresponding income tax. The beneficiaries also filed returns for the income received in those years.

The Secretary of the Treasury determined that the total amount of income from the trust funds were attributable to the father-grantor, and after allowing the corresponding credits for the income taxes paid by the trustee and the beneficiaries he notified him the deficiencies for the years in controversy. The trial court upheld the Secretary's determination relying on the opinion rendered in *Alvarez* v. *Sec. of the Treasury*, 80 P.R.R. 15 (1957). To that end, it stated: "There is no evidence that, as a matter of fact and notwithstanding the instrument executed, the grantors did not continue in the possession and control of their capital in the part-

nership Monllor y Boscio, Sucrs., the plaintiff being the only managing partner and administrator of the said capital.[1] There is no evidence that, as a matter of fact, those funds were not taken out from the capital assets and otherwise invested, or that they acquired their own status in the business field under the trustee's administration."

## I

For a better understanding for the purpose of resolving the controversy, it is necessary to make reference (1) to the pertinent terms of the trust deed, and (2) to the applicable legal provisions.

1. As stated above, the three trust funds were created by public deed by the spouses Boscio-Monllor, as grantors, "for the purpose of providing for the welfare of their children" and insuring their economic independence. The beneficiaries were the three minor children of the grantors, named Roberto, Gladys, and Juan Luis, who were then 17, 13, and 3 years old, respectively. In the event of death of one or more of the beneficiaries, it was provided that the trust fund and the accrued profits would be paid to the surviving beneficiary or beneficiaries, in equal parts, in the latter case. Enrique Petrovich Boscio, a cousin of the appellant, special partner of the former partnership, and stockholder and also employee of the present corporation, was designated trustee. It was provided that in the event of death, resignation, or disability of the said trustee, he would be substituted in the first place by grantor Boscio, and in the second place—upon the occurrence of any of the said events—by the other grantor, Mrs. Monllor Boscio.

The trusts were created with irrevocable character, the grantors reserving only the power to transfer other property

---

[1] Evidently, the trial court referred to the time the trusts were constituted, since the issue involved in this litigation refers to taxable years— 1945 to 1951—when the partnership had been extinguished and substituted by the corporation within the reorganization plan to which we have made reference.

to the trust, in which case such additional property would be subject to the same terms and conditions as the original trust property.

The transfer was carried out in favor of the trustee in order that he "would administer, keep, have, hold, invest, reinvest, or otherwise dispose of the said property, as well as of any other kind of property which may be added to these trusts by transfer or otherwise subsequently made by the grantors, as well as of the rents, income, and profits yielded by these properties, including capital gains derived from the sale, conversion, disposition, liquidation, or exchange, or otherwise, of the trust property," and was fully empowered "to invest, reinvest, sell, transfer, and exchange for other property of any kind, under such transactions, agreements, and conditions as he may deem advisable, all or part of such property, as well as to exchange, if he deems it advisable, any investment, or invest and reinvest any balance or sum received from any exchange or sale of any obligations, credits and securities or other real or personal property, corporeal or incorporeal, public or private, domestic or foreign, including common or preferred shares of private or public-service corporations, or of any property, regardless of whether the latter does not produce income gain, or profit at the time of acquisition." It was further provided that the administration of the trusts would be carried out subject to the following terms and conditions:

"He shall invest and reinvest such trust funds and shall collect the interest, dividends, rents, profits, as well as any other class of income which the latter may yield, and shall pay such interest, dividends, rents, profits, gains, income, and expenses, as well as any principal of such trusts, keeping separate accounts of the income, transactions, expenses, and investments of each of the said trusts, in order to comply with the following terms:

"(a) Beneficiary Roberto Boscio Monllor shall receive during his minority, out of the gains and income from his trust fund,

including the capital gains, a sum which shall not exceed $2,400 annually, which may be paid monthly up to the amount of $200, or periodically, in the discretion of the Trustee.

"The balance of the annual profits, including any capital gain, may be invested and reinvested, and shall be accumulated in the trust to be turned over to the Beneficiary, in the discretion of the Trustee, whenever the said Beneficiary contracts marriage, terminates his professional studies, or attains majority.

"Three years after turning over the total accrued profits, the Trustee shall also turn over to him, in addition to the trust fund, any profits which shall have accrued during these three years.

"(b) Upon attaining the age of 15 years, Beneficiary Gladys Boscio Monllor shall receive, out of the profits and income from her trust fund including the capital gains, a sum which shall not exceed $2,400 annually, which may be paid monthly up to the sum of $200, or periodically, in the discretion of the Trustee.

"The balance of the annual profits, including any capital gain, may be invested and reinvested and accumulated in the trust, such balance to be turned over in its entirety to the Beneficiary, in the discretion of the Trustee, when she reaches majority, terminates her professional studies, or contracts marriage.

"(c) Upon attaining the age of 16 years, Beneficiary Juan Luis Boscio Monllor shall receive, out of the profits and income from his trust fund, including the capital or corpus gains, a sum which shall not exceed $2,400 annually, which may be paid monthly up to the sum of $200, or periodically, in the discretion of the Trustee.

"The balance of the annual profits from his trust, including any capital gain, may be invested or reinvested and accumulated in the trust, such balance to be turned over in its entirety to the Beneficiary, in the discretion of the Trustee, upon reaching majority, terminating his professional studies, or contracting marriage.

". . . The payment to the Beneficiaries of the profits accruing from these three trusts may be made in cash, in kind, or in both, in the discretion of the Trustee, when they attain majority, contract marriage, or terminate their professional studies.

"... If the net profits from each of the three trusts in any fiscal year were insufficient to pay to the Beneficiaries their allowance for that year, the Trustee is empowered to cancel such annuities or to reduce them to the extent of the net annual profit realized."

As respects corporate shares, the trustee was expressly authorized to exercise the right to vote at the stockholders' meetings "using his own judgment and discretion in those matters to be voted upon."

Lastly, the beneficiaries waived any right conferred on them by the laws of the country with respect "to the profits accruing from each of the trusts."

2. The provisions of the Income Tax Act of 1924 applicable in determining the appellant's tax liability are §§ 15(a), 20(g), and 20(h), 13 L.P.R.A. §§ 694(a), 699(g), and 699(h),[2] which read as follows:

---

[2] These provisions correspond to §§ 22(a), 166, and 167 of the Federal Income Tax Act of 1939. As indicated in footnote 16 of the opinion in *Alvarez* v. *Sec. of the Treasury*, 80 P.R.R. 15, 28, in 1943, and as a result of the decision in *Helvering* v. *Stuart*, 317 U.S. 154 (1942), Congress added subsection (c) to § 167 (26 U.S.C.A., Internal Revenue Acts Beginning 1940, p. 458), providing that income from a trust shall not be included in the gross income of the grantor merely because such income may be applied for the support of a minor except to the extent that such income is in fact so used. *Cf. Roig* v. *Sec. of the Treasury*, 84 P.R.R. 141 (1961). and *Serrallés* v. *Sec. of the Treasury*, 84 P.R.R. 10 (1961). Our Legislative Assembly did not adopt this subsection until the enactment of the Income Tax Act of 1954, § 167 of Act No. 91 of June 29, 1954 (Sess. Laws, p. 474, 13 L.P.R.A. § 3167).

The Federal Income Tax Act of 1954 contains in Subpart E of Subchapter J the provisions applicable to those cases in which the income or profits of a trust are attributable to the grantors, 26 U.S.C. §§ 671–78, especially §§ 676 and 677, counterpart of §§ 166 and 167 of the 1939 Act. See, also, §§ 1.676(a), 1.676(b), 1.677(a), and § 1.677 (b) of the existing Federal Regulations (Federal Tax Regulations 864–67, 1961).

As respects income from trusts for the taxable years from and after 1954, see §§ 166 and 167 of Act No. 91 of June 29, 1954, 13 L. P.R.A. §§ 3166 and 3167, and §§ 22(a)-21, 166-1, 167-1, and 167-2 of the 1954 Regulations, approved July 11, 1957, 13 R.&R.P.R. §§ 3022(a)-21, 3166-1, 3167-1, and 3167-2. These sections of the 1954 Regulations correspond literally to the Federal Regulations under the Act of 1939, namely, §§ 39.22(a)-21, 39.166, 39.167-1, and 39.167-2; Federal Tax Regulations 504-09 and 1010-13 (1956).

*Section 15 (a)*

"The term 'gross income' includes gains, profits, or income derived from salaries, wages, or compensation for personal services (including, in the case of the officers and employees of the Commonwealth of Puerto Rico, of the United States, or of any political subdivision thereof, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, partnership profits, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever . . ."

*Section 20 (g)*

"Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor."

*Section 20 (h)*

"Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in paragraph (10) of subdivision (a) of section 695 of this title), such part of the income of the trust shall be included in computing the net income of the grantor."

It is also pertinent to consider art. 207 of Regulations No. 1, promulgated under the Income Tax Act of 1924,[3] which was in force until the enactment of the new Act in 1954. It read as follows:.

---

[3] Bureau of Supplies, Printing, and Transportation 135 (1926).

The original version was adopted in the English language, as copied above.

"Income of Trusts Taxable to Grantor.—In the case of certain trusts which are in whole or in part subject to revocation by the grantor, or which are for the benefit of the grantor, the income of the trust is to be included in computing the net income of the grantor. The income of such trusts must be so included, whether or not the trust was created before the enactment of this Act. The cases in which the income of the trust is to be included, in whole or in part, in computing the net income of the grantor are as follows:

"(1) Where the grantor of the trust has, at any time during the taxable year, either alone or in conjunction with a person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, the income of such part of the trust for that taxable year shall be included in computing the net income of the grantor. The grantor shall include in his income the entire gross income of such part of the trust, and shall be entitled to such deductions with reference to such income as he would have been entitled to if the trust had not been created. Where the grantor relinquishes during the taxable year his power to revest in himself title to the corpus of the trust, the income of the trust shall be taxable to the grantor only for the period during which he had such power.

"(2) Where any part of the income of the trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him; and

"(3) Where any part of the income of the trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor, other than policies irrevocably payable for the purposes and in the manner specified in section 16(a)(10), such part of the income of the trust shall be included in computing the net income of the grantor.

"The term 'beneficiary' as used in this article includes any person entitled to an interest in the income or the principal of a trust, but does not include one having merely a nominal interest in the income of principal."

## II

██ As may be determined from a reading of the transcribed provisions, the income from a trust is attributable to

the grantor (a) whenever the latter retains the power to revest in himself the trust property—§ 20(g); (b) whenever under the terms of the trust the income or profits may be distributed directly to the grantor, or accumulated for future distribution to him, or applied to the payment of premiums. upon policies of insurance on his life—§ 20(h); and (c) in the case of trusts in which the grantor has reserved an effective control in relation to the trust property, its disposition, and the income derived therefrom—§ 15(a). The latter are known in the federal jurisdiction as "Clifford trusts" and "Section 22(a) trusts," in view of the fact that they were accorded definitive judicial sanction in *Helvering* v. *Clifford*, 309 U.S. 331 (1940), and the imposition of the tax is warranted under the general definition of gross income contained in the said section.[4]

■■ As a general rule, the determination of whether the income and profits derived from the trust should be included in the gross income of the grantor, rests on an analysis of the terms of the instrument of constitution of the trust and the circumstances attending its creation and operation. *Holdeen* v. *Ratterree*, 270 F.2d 701 (C.A. 2, 1961); *Stockstrom* v. *Commissioner*, 151 F.2d 353 (C.C.A. 8, 1945); *Miller* v. *Commissioner*, 147 F.2d 189 (C.C.A. 6, 1945); *George* v. *Commissioner*, 143 F.2d 837 (C.C.A. 8, 1944); *Commissioner* v. *Katz*, 139 F.2d 107 (C.C.A. 7, 1943). It is necessary to consider jointly all the factors and

---

[4] The time limitations imposed by our congested calendar prevent us from making an elaborate and complete exposition of the evolution and development of these trusts in federal tax law. See 6 Mertens, Law of Federal Income Taxation, §§ 37.39 to 37.45 and § 37.47 (1957); 2 Nossaman, Trust Administration and Taxation, §§ 709–11 (1952); Kennedy, Federal Income Taxation of Trusts and Estates, §§ 6.01–6.30A (1948); Paul, *Trusts and Federal Taxation,* 31 Taxes 608 (1953); Friedland. *Irrevocable Trusts,* 28 Taxes 115 (1950); Holzman, *Helvering* v. *Clifford. Is the Grantor of a Trust the Owner of the Corpus?,* 26 Taxes 1067 (1948); Magill, *What Shall We Do With the Clifford Case?,* 23 Taxes 290 (1945); Notes, 20 So. Cal. L. Rev. 392 (1947); 18 Texas L. Rev. 478 (1941); 55 Harv. L. Rev. 295 (1941).

elements, for there actually does not exist a specific fact which may be pointed out as being controlling by itself. We wish to anticipate that the existence of a family relationship is not an inflexible index that the grantor retains the control over the trust property and the income therefrom, although it is a circumstance which ought to be considered. *Kay* v. *Commissioner*, 178 F.2d 772 (C.A. 3, 1950); *Anderson* v. *Commissioner*, 164 F.2d 870 (C.C.A. 7, 1947); *Commissioner* v. *Newman*, 159 F.2d 848 (C.C.A. 2, 1947); *Cushman* v. *Commissioner*, 153 F.2d 510 (C.C.A. 2, 1946). Let us therefore examine the trusts in the instant case.[5]

(a) Under the terms of the trusts, the trust property can not revert to the appellant. Not only is it provided that the transfer is irrevocable, but that three years after distributing among the beneficiaries the accrued gains and profits "the trustee shall also turn over to him, in addition to the trust fund, any profits which shall have accrued during these three years." [6] Nor does the grantor acquire any right in the property in the event of death of any of the beneficiaries. This being so, neither § 20(g) nor art. 207(1) of the Regulations of 1924 is applicable.

(b) The grantor does not receive directly the gains and profits derived from the trusts, nor are the latter accumulated for distribution in the future, but the accumulation authorized is for purposes of reinvestment, and upon the occurrence of the afore-mentioned events, for distribution among the beneficiaries. Therefore, neither § 20(h) nor art. 207(2) of the 1924 Regulations is applicable, except

---

[5] This case was submitted by the parties by a stipulation of facts and the presentation of copies of the deed of trust constitution, the explanatory deed, and the deed of incorporation of Monllor y Boscio, Sucrs., *S. en C.* In the first part of this opinion we have made reference to the facts necessary for the decision of the controversy.

[6] No reference was made in the original deed of constitution of trusts to the final delivery of the corpus to beneficiaries Gladys and Juan Luis Boscio Monllor, but this omission was subsequently corrected by the execution of an explanatory deed—deed No. 141 of September 22, 1947 executed before Notary Diego Guerrero Noble.

as provided in the following paragraph. Furthermore, in *Roig v. Sec. of the Treasury, ante,* p. 141, we held that the legal usufruct granted to the parents over the property of the children is waivable, and in the instant case the grantors expressly waived such right, wherefore, like in *Alvarez v. Sec. of the Treasury,* 80 P.R.R. 15 (1957), § 155 of the Civil Code, 31 L.P.R.A. § 612, does not apply.

 However, in *Alvarez v. Sec. of the Treasury,* 80 P.R.R. 15, 28 (1957), we said that the doctrine enunciated by the Federal Supreme Court in *Helvering v. Stuart,* 317 U.S. 154 (1942), to the effect that under a provision in an instrument of constitution of trust to the effect that the income therefrom might, in the discretion of the trustees, be used for the support of the minor children of the father-grantor, the mere possibility of the use of the income to relieve the latter, pro tanto, of his legal obligation to provide support, is sufficient to bring the entire income of the trust within the gross income of the grantor,[7] applies to cases arising under our § 20(h), namely, to the income derived from a trust between 1928 and 1954. Although in the instant case the trust deed does not make express reference to the fact that the trust income may be used for the support of the children, it appears clearly that the grantors set aside a certain portion of the income to be distributed annually— under certain circumstances which we need not state—to the beneficiaries. As respects these specific amounts, the possibility can not be foreclosed that they be applied to defray expenses of the minors, and in the absence of a showing that they were not used for such purpose, *Hopkins v. Commissioner,* 144 F.2d 683 (C.C.A. 6, 1944); *cf. Serrallés v. Sec. of the Treasury, ante,* p. 10; *Carrión v. Sec. of the Treas-*

---

[7] See, Annotations, *Liability of settler for income tax in respect of trust income applied to relieve him of financial obligation or burden,* 158 A.L.R. 1315, 1324 (1945); 132 A.L.R. 819, 834 (1941); 109 A.L.R. 1048, 105? (1937); and 101 A.L.R. 397, 403 (1936); Mertens, *op. cit.,* §§ 37.47 and 37.48.

*ury*, No. 596, petition for review denied December 21, 1961, it was proper to include the amounts actually delivered to the beneficiaries in the income of the taxpaying father. The appellant was bound to establish that although his children received this portion of the trust income, he complied with his obligation to support them imposed by law out of his personal property or income. *Cf. Hamiel's Estate* v. *Commissioner of Internal Revenue*, 253 F.2d 787 (C.A. 6, 1958) ; *Hopkins* v. *Commissioner of Internal Revenue*, 144 F.2d 683, 692 (C.C.A. 6, 1944) ; *Commissioner of Internal Revenue* v. *Katz*, 139 F.2d 107 (C.C.A. 7, 1943). During the hearing held on the 8th ultimo the attorney for the appellant accepted it in admitting that this portion of the trust income was attributable to the appellant.[8] Regarding the situation after 1954, see § 167(c) of Act No. 91 *supra*. However, as respects the balance of the annual income from the trust to be specifically applied pursuant to the terms of the constitution deed—to be accumulated in the property to be reinvested by the trustee and eventually distributed to the beneficiaries—[9] there was no possibility that it could be applied to pay for the needs of the beneficiaries, and therefore the doctrine of the *Stuart* case would not apply. Hence, we are bound to determine lastly whether the balance of the annual profits should be included in the appellant's income in view of the applicability of § 15(a) of the Income Tax Act of 1924.

■ (c) Even though the income from a trust is not applied to cover legal obligations of the grantor, if under the terms of the trust the latter retains such full control as to re-

---

[8] Clearly, we can not extend this determination beyond the date the beneficiaries attained majority: Roberto Boscio Monllor, in 1946, and Gladys Boscio Monllor, in 1950.

[9] Even though there was a possibility that the beneficiaries would receive the amount of the accrued profits during the minority if they contracted marriage or terminated their professional studies before attaining 21 years of age, the occurrence of any of these events would also stop the father's obligation to provide support. Sections 150 and 239 of the Civil Code, 31 L.P.R.A. §§ 569 and 931; *Alcaide* v. *Alcaide*, 30 P.R.R. 422 (1922).

main, for all practical purposes, the owner of the corpus object of the trust, the proceeds of the trust are taxable to the grantor under the provisions of § 15(a) *supra*, counterpart of § 22(a) of the Federal Act of 1939. *Helvering* v. *Clifford*, 309 U.S. 331 (1940).

In general terms, the determination of whether the trusts may be treated as "Clifford trusts" depends on the degree of control retained by the grantor in connection with the trust and its operation, as well as the profits which he receives or may receive from the distribution of the gains. In other words, whether the grantor retains a "bundle of rights"—"bundle of rights" is the phrase used by the Federal Supreme Court in the opinion in the *Clifford* case—which, because they entail direct or indirect benefits, are tantamount to retaining the economic control of the trust property. Several factors are considered in this connection, as for example (without pretending to include all of them), (1) the term of the trust; (2) the power to substitute the trustee or the beneficiary; (3) the power to intervene in the distribution or accumulation of the gains and profits; (4) the power to approve the administrative actions of the trustee; (5) the reservation of the power to vote for the trust shares, whenever such is the object of the trust; (6) the power to substitute the trust property, or to acquire them with preference or for a sum less than its fair value, or to borrow money from the trust; (7) the existing family relationship between the parties; (8) the power to relieve the trustee from any responsibility for his actions as such; (9) the power to order the sale of trust property, or to prevent its sale and disposition. See Annotations, *Liability of settler for income tax in respect of income of short term trust or trust over which he retains control and management*, 132 A.L.R. 844 (1941); 153 A.L.R. 550 (1944); 166 A.L.R. 1308 (1947); *Reservation of settler of power to alter or modify trust provisions as regards distribution among named beneficiaries, as sub-*

*jecting him individually to income tax,* 163 A.L.R. 750 (1946) ; *Taxation of income of trust, as affected by provision in trust instrument relating to amendment or modification of trust,* 128 A.L.R. 1181 (1940). An appendix is inserted at the end of this opinion containing a list of cases decided by the circuit courts in which this question of control by the beneficiary was discussed, and which were decided by the application of the afore-mentioned factors.

On two previous occasions we have considered the application of the *Clifford* case to situations involving trusts and the determination whether the grantor retained the degree of control required for the inclusion of the trust income in his individual return. In *Clínica Juliá v. Sec. of the Treasury,* 76 P.R.R. 476, 504–05 (1954), we stated that the circumstances of the *Clifford* case were not present therein because (1) the trusts were irrevocable; (2) the Juliá spouses—grantors—did not reserve any power or control over the properties of the trust; and (3) nor over their administration, investment, or reinvestment. We also stated—probably bearing in mind § § 20 (g) and 20 (h) —that the *corpus* and the income did not revert to them upon termination of the trusts, but to the beneficiaries. As may be noted, all these circumstances of the *Juliá* case are present in the instant *Boscio* case. In *Álvarez v. Sec. of the Treasury,* 80 P.R.R. 15, 29–30 (1957), we applied the *Clifford* case invoking the provisions of § § 154 and 155 of the Civil Code, 31 L.P.R.A. § § 611 and 612, which vest in the father the administration and usufruct of the property of the children. We said that, since under the terms of the trust deed the beneficiaries were permitted to withdraw the profits, and § 154 required the father to determine whether he exercised this right to withdraw the income and to administer it on behalf of the minor beneficiaries, this power, together with the legal usufruct, was sufficient to make the income from the trust taxable to the father. These two circumstances are not present in this

case. As has been seen, the beneficiaries can not receive annually a sum greater than that fixed upon the creation of the trust, which we have decided that, for other reasons, it must be included in the father's return. And even though with respect to this annual amount the paternal discretion does not intervene at all to demand its delivery, within his administrative power, since the trust provision on annual payments is mandatory. Regarding the right of usufruct, we already said that the appellant waived the same validly, *Roig* v. *Sec. of the Treasury, ante*, p. 141.

Having examined closely all the terms of the trust, and considering them jointly, we can not conclude that the appellant retained a control of the trust so complete that he was still for any practical purpose the owner of the corpus of the trust. It appears clearly that he has no right to revert the corpus in his favor at any time; he has no intervention in the administration or operation of the corpus or accrued profits; he did not retain the right to vote on the shares comprised in the corpus of the trust; he did not retain the right to change or substitute the beneficiaries or the trustee; nor could he encroach upon the corpus in order to reacquire its property or determine its disposition.

The mere existence of a family relationship between the grantor and the trustee, in the absence of evidence that it is a subterfuge, is not sufficient to overlook the fact that the income from the trust corresponds to the beneficiaries—*Belaval* v. *Court of Eminent Domain*, 71 P.R.R. 246 (1950)—and that we attribute them to the father. The trust presupposes a relationship of confidence. It is easily conceivable that in Puerto Rico, where there are few banking institutions or other organizations actively engaged in the administration of trusts, resort is had to the relatives and close friends with the necessary experience to discharge the office of trustee. Lastly, the Secretary relies on the fact that the appellant could become trustee in the event of death,

disability, or resignation of the first person designated, but this fact is not decisive either. *Holdeen v. Ratterree,* 270 F.2d 701 (C.C.A. 2, 1960) ; *United States v. Morss,* 159 F.2d 142 (C.C.A. 1, 1947) ; *Hall v. Commissioner of Internal Revenue,* 150 F.2d 304 (C.C.A. 10, 1945).

The *Clifford* case has led to considerable uncertainty and become a fertile field for litigation. Following the recommendations in the opinion of the Supreme Court, the Commissioner of Internal Revenue promulgated the so-called Clifford Regulations, namely, § 39.22 (a)-21, to which reference was made in footnote 2 of this opinion and which was translated literally and incorporated in our 1954 Regulations as § 22 (a)-21. The purpose of this sanction was to fix definite principles for applying the *Clifford* doctrine to different factual situations: "the provisions of this section accordingly resolve the present difficulties of application by defining and specifying those factors which demonstrate the retention by the grantor of such complete control of the trust that he is taxable on the income therefrom under § 22 (a)." See Smith, *How New Regulations Affect the Clifford Case,* 24 Taxes 624 (1946) ; Guterman, *The New Clifford Regulations,* 1 Tax L. Rev. 379 (1946) ; Atlas, *The Clifford Regulations: Genesis of a Concept,* 25 Texas L. Rev. 373 (1946). Should we accept *arguendo* that this administrative regulation represents the Secretary's position in the determination whether the instant case is a Clifford-type trust, our conclusion would have to be otherwise, for the three principal factors supplied as guide in § 22 (b)-21 are conspicuously absent. Those factors are: [10]

"(1) the corpus or the income therefrom will or may return after a relatively short term of years;
"(2) the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition (other than certain excepted powers), whether by revocation, alteration or

[10] For a more specific exposition on the scope of these factors, see subds. (c), (d), and (e) of that section.

otherwise, exercisable by the grantor, or another person lacking a substantial adverse interest in such disposition, or both; or

"(3) the corpus or the income therefrom is subject to administrative control, exercisable primarily for the benefit of the grantor."

The trial court attached great importance to the fact that the appellant continued in the "possession and control" of his capital in the partnership Monllor y Boscio, Sucrs., and to the absence of evidence on the fact that the funds were taken out from the capital assets and invested in other independent business. Presumably, this reasoning could extend to the corporate shares comprising the corpus of the trust during the years involved in this litigation. Even if we were agreed that originally the appellant exercised control of the partnership—by his capacity as sole managing partner—and afterwards of the corporate business—by his capacity as president of Monllor y Boscio, Sucrs., Inc.—it does not necessarily follow that he had control of the trust property, *cf. Edison* v. *Commissioner of Internal Revenue*, 148 F.2d 810 (C.C.A. 8, 1945); *Byerly* v. *Commissioner*, 154 F.2d 879 (C.C.A. 6, 1946). Once again we invite attention to the absence (a) of any reservation in his favor to exercise the right to vote the shares, and (b) of any condition in the deed of constitution obligating the trustee not to dispose of the shares and to conserve them at all times until the corporation was liquidated. On the contrary, the powers vested in the trustee as respects the disposition and alienation of the trusted property were broad, generous, and practically unlimited. *Cf. Tower* v. *Commissioner of Internal Revenue*, 148 F.2d 388, 390–91 (C.C.A. 6, 1945).

In view of the foregoing, the judgment rendered by the Superior Court, San Juan Part, on September 11, 1957, will be modified in the sense of excluding from appellant's gross income any income derived from the trusts in excess of the annual sums paid to the beneficiaries, and likewise excluding

any amount distributed to the beneficiaries, Roberto and Gladys Boscio Monllor, after attaining majority. As thus modified, it will be affirmed.

APPENDIX

A—*Cases in which the Income from the Trust was Taxable to the Grantor*

*Laganas* v. *Commissioner,* 281 F.2d 731 (C.A. 1, 1960)

*Goemans* v. *Commissioner,* 279 F.2d 12 (C. A. 7, 1960)

*Holdeen* v. *Ratterree,* 270 F.2d 701 (C.A. 2, 1959)

*Barber* v. *United States,* 251 F.2d 436 (C.A. 5, 1958)

*Paster* v. *Commissioner,* 245 F.2d 381 (C.A. 8, 1957)

*Harvey* v. *Commissioner,* 227 F.2d 526 (C.A. 6, 1955)

*Wheeling Dollar Savings & Trust Co.* v. *Yoke,* 204 F.2d 410 (C.A. 4, 1953)

*Ingle* v. *McGowan,* 189 F.2d 785 (C.A. 2, 1951)

*Kay* v. *Commissioner,* 178 F.2d 772 (C.A. 3, 1950)

*Green* v. *Commissioner,* 168 F.2d 994 (C.A. 6, 1948)

*Shapero* v. *Commissioner,* 165 F.2d 811 (C.A. 6, 1948)

*Eisenberg* v. *Commissioner,* 161 F.2d 506 (C.C.A. 3, 1947)

*Commissioner* v. *Newman,* 159 F.2d 848 (C.C.A. 2, 1947)

*McCutchin* v. *Commissioner,* 159 F.2d 472 (C.C.A. 5, 1947)

*Cory* v. *Commissioner,* 159 F.2d 391 (C.C.A. 3, 1947)

*Emery* v. *Commissioner,* 156 F.2d 728 (C.C.A. 1, 1946)

*Littel* v. *Commissioner,* 154 F.2d 922 (C.C.A. 2, 1946)

*Byerly* v. *Commissioner,* 154 F.2d 879 (C.C.A. 6, 1946)

*Sinopoulo* v. *Jones,* 154 F.2d 648 (C.C.A. 10, 1946)

*Steckel* v. *Commissioner,* 154 F.2d 4 (C.C.A. 6, 1946)

*Stockstrom* v. *Commissioner,* 151 F.2d 353 (C.C.A. 8, 1945)

*Edison* v. *Commissioner,* 148 F.2d 810 (C.C.A. 8, 1945)

*Funsten* v. *Commissioner,* 148 F.2d 805 (C.C.A. 8, 1945)

*Miller* v. *Commissioner,* 147 F.2d 189 (C.C.A. 6, 1945)

*Losh* v. *Commissioner,* 145 F.2d 456 (C.C.A. 10, 1944)

*George* v. *Commissioner,* 143 F.2d 837 (C.C.A. 8, 1944)

*Central National Bank* v. *Commissioner,* 141 F.2d 352 (C.C.A. 6, 1944)

*Foerderer* v. *Commissioner,* 141 F.2d 53 (C.C.A. 3, 1944)

*Jergens* v. *Commissioner,* 136 F.2d 497 (C.C.A. 5, 1943)

*Downie* v. *Commissioner,* 133 F.2d 899 (C.C.A. 6, 1943)

*Williamson* v. *Commissioner,* 132 F.2d 489 (C.C.A. 7, 1942)

*Commissioner* v. *Willson,* 132 F.2d 255 (C.C.A. 6, 1942)
*United States* v. *Anderson,* 132 F.2d 98 (C.C.A. 6, 1942)
*Price* v. *Commissioner,* 132 F.2d 95 (C.C.A. 6, 1942)
*Brown* v. *Commissioner,* 131 F.2d 640 (C.C.A. 3, 1942)
*Jacobs* v. *Commissioner,* 129 F.2d 99 (C.C.A. 5, 1942)
*Commissioner* v. *Lamont,* 127 F.2d 875 (C.C.A. 2, 1942)
*Cory* v. *Commissioner,* 126 F.2d 689 (C.C.A. 3, 1942)
*Commissioner* v. *Goulder,* 123 F.2d 686 (C.C.A. 6, 1941)
*Bush* v. *Commissioner,* 123 F.2d 242 (C.C.A. 8, 1941)
*McKnight* v. *Commissioner,* 123 F.2d 240 (C.C.A. 8, 1941)
*Helvering* v. *Elias,* 122 F.2d 171 (C.C.A. 2, 1941)
*Commissioner* v. *Woolley,* 122 F.2d 167 (C.C.A. 2, 1941)
*Commissioner* v. *Barbour,* 122 F.2d 165 (C.C.A. 2, 1941)
*Commissioner* v. *Buck,* 120 F.2d 775 (C.C.A. 2, 1941)
*White* v. *Higgins,* 116 F.2d 312 (C.C.A. 1, 1940)

B—*Cases in Which the Income From the Trust Was Not Taxable to the Grantor*
*Hamiel's Estate* v. *Commissioner,* 253 F.2d 787 (C.A. 6, 1958)
*Edwards* v. *Greenwald,* 217 F.2d 632 (C.A. 5, 1954)
*Scofield* v. *Mauritz,* 206 F.2d 135 (C.A. 5, 1953)
*Commissioner* v. *Goodan,* 195 F.2d 498 (C.A. 9, 1952)
*Funk* v. *Commissioner,* 185 F.2d 127 (C.A. 3, 1950)
*Tobin* v. *Commissioner,* 183 F.2d 919 (C.A. 5, 1950)
*Allen* v. *Nunnally,* 180 F.2d 318 (C.A. 5, 1950)
*United States* v. *Morss,* 159 F.2d 142 (C.C.A. 1, 1947)
*Thomas* v. *Feldman,* 158 F.2d 488 (C.C.A. 5, 1946)
*Commissioner* v. *Greenspun,* 156 F.2d 917 (C.C.A. 5, 1946)
*Cushman* v. *Commissioner,* 153 F.2d 510 (C.C.A. 2, 1946)
*Kohnstamn* v. *Pedrick,* 153 F.2d 506 (C.C.A. 2, 1945)
*Hawkins* v. *Commissioner,* 152 F.2d 221 (C.C.A. 5, 1945)
*Sunderland* v. *Commissioner,* 151 F.2d 675 (C.C.A. 3, 1945)
*Hall* v. *Commissioner,* 150 F.2d 304 (C.C.A. 10, 1945)
*Armstrong* v. *Commissioner,* 143 F.2d 700 (C.C.A. 10, 1944)
*Commissioner* v. *Katz,* 139 F.2d 107 (C.C.A. 7, 1943)
*United States* v. *Pierce,* 137 F.2d 428 (C.C.A. 8, 1943)
*Phipps* v. *Commissioner,* 137 F.2d 141 (C.C.A. 2, 1943)
*Helvering* v. *Bok,* 132 F.2d 365 (C.C.A. 3, 1943)
*Hogle* v. *Commissioner,* 132 F.2d 66 (C.C.A. 10, 1942)
*Commissioner* v. *Bateman,* 127 F.2d 266 (C.C.A. 1, 1942)
*Suhr* v. *Commissioner,* 126 F.2d 283 (C.C.A. 6, 1942)
*Commissioner* v. *Armour,* 125 F.2d 467 (C.C.A. 7, 1942)

*Commissioner* v. *Betts,* 123 F.2d 534 (C.C.A. 7, 1941)
*Commissioner* v. *Jonas,* 122 F.2d 169 (C.C.A. 2, 1941)
*Jones* v. *Morris,* 122 F.2d 6 (C.C.A. 10, 1941)
*Commissioner* v. *Chamberlain,* 121 F.2d 765 (C.C.A. 2, 1941)
*Commissioner* v. *Branch,* 114 F.2d 985 (C.C.A. 1, 1940)
*Helvering* v. *Achelis,* 112 F.2d 929 (C.C.A. 2, 1940)