**Michael P. GRACE, II, Plaintiff,**

v.

**GRACE NATIONAL BANK OF NEW YORK et al., Defendants.**

**No. 65 Civ. 2388.**

United States District Court,
S. D. New York.

Aug. 10, 1971.

Lewis M. Dabney, Jr., New York City, for plaintiff; Liebman, Eulau, Robinson & Perlman, Herbert Robinson, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants; Lawrence J. McKay, Paul W. Williams, David R. Hyde, Mathias E. Mone, New York City, of counsel.

OPINION

BONSAL, District Judge.

In this action, plaintiff Michael P. Grace II sues individually, and derivatively on behalf of the stockholders of the former Grace National Bank of New York ("Grace National Bank"), to recover damages for alleged breach of fiduciary duty by W. R. Grace & Co. in connection with the sale of the assets of the Grace National Bank to The Marine Midland Trust Company of New York ("Marine Midland Trust Co."). Marine Midland Trust Co. and Marine Midland Corporation are joined as defendants on the ground that they conspired with W. R. Grace & Co. in the breach of the latter's fiduciary duty, which allegedly resulted in W. R. Grace & Co. appropriating assets of the Grace National Bank without compensation to its minority stockholders.

At the time of the sale of the assets of Grace National Bank to Marine Midland Trust Co., plaintiff was the owner of record of 143 shares of Grace National Bank; was co-executor of the estate of his father, which owned 45 shares of Grace National Bank stock as to which plaintiff had a one-quarter interest; and had a one-third contingent interest in 141 shares of Grace National Bank stock which were held by the Bank as a committee for his sister. W. R. Grace & Co. owned more than 80% of the capital stock of Grace National Bank, and the remaining shares were owned by approximately 120 stockholders.

On September 11, 1964, an agreement was entered into between W. R. Grace & Co., Grace National Bank, Marine Midland Trust Co. and Marine Midland Corporation, pursuant to which substantially all of the business and assets of Grace National Bank were sold to Marine Midland Trust Co., which changed its name to Marine Midland Grace Trust Company of New York. The agreement provided that the stockholders of Grace National Bank would receive convertible cumulative preferred stock of Marine Midland Corporation, which owned over 99% of the capital stock of Marine Midland Trust Co. The sale was approved by the Banking Board of the State of New York, by the Superintendent of Banks of New York, by the Federal Reserve Board, and by the stockholders of Grace National Bank at a special meeting held on May 13, 1965, at which 94.79% of the stockholders voted in favor of the sale and of the liquidation of Grace National Bank. Plaintiff and one other stockholder, holding 17 shares, voted against the sale. Following the sale on August 18, 1965, Grace National Bank, pursuant to the agreement, changed its name to Water Street National Bank and was liquidated.

Plaintiff instituted this action on August 4, 1965. On December 24, 1968, Judge Tyler granted the defendants' motion for summary judgment with respect to all claims asserted in the complaint except the following:

(1) Plaintiff's claim that there were other offers for the assets of the Grace National Bank which were better than the offer of Marine Midland Trust Co. which was accepted.

(2) Plaintiff's claim that the Grace National Bank was entitled to compensation in connection with the lease at No. 5 Hanover Square.

(3) Plaintiff's claim that W. R. Grace & Co. misappropriated Grace National Bank's "reversion" of the name "Grace" in the banking business.

These three claims came on for trial on May 24, 1971. At the close of the plaintiff's case, the court dismissed the complaint with respect to defendants Marine Midland Trust Co. and Marine Midland Corporation, without objection by plaintiff. Since plaintiff offered no evidence that there were other offers for the assets of Grace National Bank better than the one which was accepted, or that Grace National Bank was entitled to compensation in connection with the lease at No. 5 Hanover Square, plaintiff's first and second claims were dismissed. Therefore, the only issue tried was plaintiff's claim that W. R. Grace &

Co. misappropriated the "reversion" of the name "Grace" in the banking business. This claim arose out of paragraph 23 of the agreement of September 11, 1964, which provides as follows:

"23. Use of Grace Name.

On the date of the Closing the name of the Trust Company [Marine Midland Trust Co.] will be changed to 'Marine Midland Grace Trust Company of New York.' Subject to the consummation of the transactions contemplated hereby, Grace Bank [Grace National Bank] and Grace [W. R. Grace & Co.] hereby agree and consent that the Trust Company may use the name 'Grace' in the name of the Trust Company provided, however, that (a) this right is limited to the use of the name 'Grace' *per se* and this only as part of the name of the Trust Company * * * and (b) at any time five year's (sic) after the date of Closing, the Trust Company will change its name so as to eliminate 'Grace' from its name within six months after receiving from Grace a written request so to change its name."

Plaintiff contends that paragraph 23 granted to Marine Midland Trust Co. the right to use the name "Grace" in the banking business for five years and granted to W. R. Grace & Co. a reversion of the name, which reversion plaintiff contends W. R. Grace & Co. misappropriated from Grace National Bank when on August 18, 1965 W. R. Grace & Co. caused Grace National Bank to assign to it "all of Grace Bank's right, title and interest in and to all trademarks and trade names, registered and unregistered," without compensation to Grace National Bank or its stockholders.

Dr. Bellemore, an expert in finance and security analysis, testified for the plaintiff. Based on a valuation of $36,-000,000. placed on the preferred stock received by the stockholders of Grace National Bank, which Dr. Bellemore thought was a sound valuation of the assets sold, he estimated that the value of the intangibles was $14,000,000. in-cluding a value of $7,000,000. for the name "Grace" in the banking business. Using the valuation of $7,000,000., Dr. Bellemore estimated that the value of the name for a term of five years was $4,500,000., leaving a "residual value" of $2,500,000. which he discounted to June 1964, reaching a value of $1,865,000. which in his opinion was the value of the name after five years.

Since the $1,865,000. was part of the $36,000,000. which was the "sound" value of the preferred stock received by the stockholders of Grace National Bank for all of the assets, it is obvious that the stockholders of Grace National Bank were fully compensated unless paragraph 23 provided that the name "Grace" in the banking business reverted to W. R. Grace & Co. after five years, and W. R. Grace & Co. appropriated the reversion from Grace National Bank without compensation to Grace National Bank or its stockholders.

However, paragraph 23 does not provide a reversion of the name to either W. R. Grace & Co. or Grace National Bank. By paragraph 23, Grace National Bank and W. R. Grace & Co. conferred on Marine Midland Trust Co. the right to use the name "Grace" as part of its corporate name subject only to the right in W. R. Grace & Co. to require Marine Midland Trust Co. to change its name to eliminate the word "Grace" after five years upon giving Marine Midland Trust Co. six months' prior notice.

In October, 1970, Marine Midland Trust Co. voluntarily and without any request from W. R. Grace & Co. dropped "Grace" from its name. Moreover, there was no evidence presented at trial that the name "Grace" in the banking business had any value at the time Marine Midland Trust Co. voluntarily dropped it, and indeed, defendants' witness Rupley, a director of W. R. Grace & Co., testified that it had no value at the time of trial.

For the foregoing reasons, the court finds that W. R. Grace & Co. did not misappropriate Grace National Bank's

"reversion" of the name "Grace" in the banking business. Accordingly, judgment will be entered dismissing the complaint with costs and disbursements to the defendants to be taxed by the Clerk.

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.

Settle judgment on notice.