**ESTATE of D. E. HAMIEL, Deceased, The Ohio National Bank of Columbus, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13211.

United States Court of Appeals
Sixth Circuit.
April 9, 1958.

Roger K. Powell, Columbus, Ohio, for petitioner.

Melvin L. Lebow, Washington, D. C., Charles K. Rice, John N. Stull, Robert N. Anderson, Washington, D. C., on brief, for respondent.

Before McALLISTER and MILLER, Circuit Judges, and LEVIN, District Judge.

McALLISTER, Circuit Judge.

The issue in this case is whether income from a trust was taxable to the grantor.

The Tax Court found that the grantor was so taxable for the reasons that: (1) the income from the trust was, in reality, the income of the grantor, and taxable to him under Section 22(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(a), and (2) that the income of the trust, which was created to satisfy the grantor's legal obligation of support and maintenance of his son, was taxable to him under Section 167 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 167.

Petitioner claims that the income taxed to the grantor did not belong to him, but to the beneficiary of the trust; but that, insofar as any amount of the income was expended to satisfy the grantor's legal obligation of support and maintenance of his son, he should be taxed on that amount alone.

The background of the case is as follows: In 1943, Dorman E. Hamiel and his wife, who were engaged in divorce proceedings, entered into a separation agreement which was incorporated in, and made a part of, the decree of divorce that was awarded to Mrs. Hamiel.

In the separation agreement, Mr. Hamiel agreed to deliver certain stock to a trustee for the benefit of his ten-year-old son. It is this trust, which was subsequently created, that is involved in the instant case. In the separation agreement between Mr. Hamiel and his wife, it was stipulated that, as to the trust for the son, the net income from the stock placed in the trust, should be held by the trustee and, by him, "applied to

and for the maintenance and education of said minor child, in addition to all other payments provided herein for him." It was further provided that Mr. Hamiel would pay to his wife "for the support and education of [their son] the sum of $115.00 per month," payable in each calendar month, until the boy was twenty-one years old, at which time the monthly payments should be reduced to a sum which would be necessary and proper for his support and education, until his education should have been completed.

It was further stipulated in the separation agreement that if Mrs. Hamiel died before the boy was twenty-one, Mr. Hamiel would continue his support until he was twenty-one, and would continue the contributions for his support and education until the education was terminated; that in the event of a divorce, the obligation of Mr. Hamiel to make the payments should continue during the aforesaid period; but that if Mrs. Hamiel remarried, the obligation of Mr. Hamiel to make such further monthly payments for the support of the child in the home, maintained by his wife, should be reduced to such sum as would be suitable and proper for the maintenance and education of the boy until he was twenty-one, and thereafter until his education should terminate "by completion or at said child's sole option." Mr. Hamiel further agreed that, for the purpose of providing for the support of the boy until he was twenty-one, he would effect life insurance on his life in a suitable company in the sum of $5,000, irrevocably designating his son as the beneficiary therein.

In addition to the foregoing provisions for the support, education, and maintenance of the minor child, Mr. and Mrs. Hamiel also agreed to convey their home to their son as part of the separation agreement; and such conveyance was duly made. The home was subject to a mortgage. In the separation agreement, Mrs. Hamiel agreed to move from the home within a stated period, if Mr. Hamiel was able to obtain for her and the child another suitable home for their maintenance at a rental price not to exceed $65 per month; and Mr. Hamiel, in the event that he was able to secure such a place, agreed to be responsible for the renting of the home conveyed to their son and for the collection of rents therefrom. Apparently the mother and child never moved from the home. It was agreed that Mr. Hamiel would receive credit for all payments he made on the mortgage obligation, taxes, assessments, and cost of maintenance, and that any balance remaining should be paid to the trustee for the maintenance and education of the child.

The trust indenture was executed after the separation agreement was entered into. In the trust indenture, however, there was no mention made of maintenance and education. It set forth that Mr. Hamiel granted to Phil S. Bradford, the trustee, the stock in question, to hold and collect the income therefrom, and after paying all necessary costs and expenses including the trustee's fee, to pay over the net income to or for the benefit of Mr. Hamiel's son until he would have attained the age of twenty-five years, or until his death, if death occurred sooner, and to deliver and transfer the corpus of the trust to the son when he would be twenty-five years of age, at which time the trust would terminate. It further provided that the trustee would have the full right and power to vote the stock at any meeting of the shareholders, and, in all other respects, to manage and control the stock in the manner provided by law for ownership of stocks. The trust indenture further recited that it was created for the purpose of carrying out the conditions of the above mentioned separation agreement between Mr. Hamiel and his wife.

The trust indenture was dated January 6, 1943. Phil S. Bradford, who was named trustee therein, was a reputable and successful attorney and a man of honor and integrity. Immediately after the execution of the trust indenture, Mr. Hamiel issued the stock in question to the trustee. On September 17, 1943, a so-called lease was signed by the trustee

on behalf of the child. On December 21, 1943, Mr. Bradford died. No fiduciary income tax returns were filed for the years 1943 through 1947 for the trust, although Mr. Hamiel himself filed income tax returns in the name of, and for, his son from 1943 to 1946, inclusive. In March, 1947, as appears from the verified petition in this case, Mr. Hamiel and Mrs. Hamiel, who were then divorced, entered into an agreement modifying the separation agreement, and naming, The Ohio National Bank of Columbus as trustee for their son, and, as such, successor trustee to Phil S. Bradford, deceased; but the bank refused to accept the trust. On June 20, 1947, the Hamiels and W. B. Bartels executed a further trust agreement, naming Mr. Bartels the successor trustee for their son, and, as such, successor to Mr. Bradford. Between June 20, 1947, and his death on January 29, 1950, Mr. Hamiel paid over to Mr. Bartels, as trustee, $5,390.38, of which Bartels paid out $3,548.46 as maintenance expenses and payments upon the mortgage on the home of the minor child. At the same time, Mr. Hamiel purchased building lots for $4,000 in the name of Mr. Bartels, trustee, which Mr. Bartels conveyed to the minor's guardian, together with $1,841.92 unexpended cash in his hands. These matters were generally denied in respondent's answer, but the denial appears to go not to the facts set forth, but to the legal conclusions drawn therefrom. The point is not of controlling importance, but may throw a light on the whole transaction. What is indicated by the foregoing is that a trustee was first appointed in strict accordance with the terms of the separation agreement and decree of divorce; that the trustee later died; that for several years, no trustee was in existence; that thereafter, Mr. and Mrs. Hamiel agreed on a successor trustee to whom the trust property was conveyed; that during the period in which no trustee was in existence, Mr. Hamiel carried the income from the stock which was due to his son, as beneficiary of the trust, on his books under the heading of accounts payable;

that Mr. Hamiel paid the income taxes of his son, and made mortgage, tax, and maintenance payments on the home owned by his son.

The Tax Court found that the assets comprising the corpus of the trust were retained and used by the grantor in a partnership; that they remained under his control and domination; that no fiduciary returns were ever filed for the trust; that no payment was made to the trustee for the use of the assets; that the income was not treated by the grantor as trust income, but as personal income of the minor son; and that, for a long period of time there was no trustee in existence. These circumstances, the Tax Court declared, warranted a holding that the trust was a sham.

But a valid trust cannot be invalidated by the unilateral act of the grantor, unless he is given that right in the trust instrument—and the grantor did not have that right in the instrument before us. Here, the trust was actually created in good faith, and as a part of a lawful requirement. Its creation was part of the obligation that the grantor assumed as a consideration for the execution of a property settlement by his wife. The property settlement embodying the agreement to create the trust was made part of the decree of the Court of Common Pleas of Franklin County, Ohio. The beneficiary never agreed to surrender his rights in the trust. The trust was entirely valid at the time of its creation. There was no way in which the grantor, himself, could invalidate it. His retention of the corpus of the trust or its income, or the use thereof, would not result in the trust's being invalid. In such instances, the grantor would become, and would be held a constructive trustee for the benefit of his son.

The facts in the case thus show that during a period of the existence of the trust, while there were irregularities in the formal procedures of management of the trust, the grantor carried, on the books of his company, under "accounts payable," the income due the beneficiary each year, and that he further filed in-

come tax returns each year for, and in the name of, his son, and paid the taxes on such income. As far as the record discloses, the son thus received everything he would have received, had the trust been meticulously observed. Even where a settlor of a trust grants himself, as trustee, the same power to deal with the trust property as he possessed before the establishment of the trust, that fact does not empower him to use the trust property for his own personal advantage and gain, so as to render income therefrom taxable to him; and no construction should be placed upon a trust agreement which would impute culpability to the trustee, or destroy the trust instrument itself unless no other construction is permissible. Hall v. Commissioner of Internal Revenue, 10 Cir., 150 F.2d 304, 308, 166 A.L.R. 1302.

However, while the Tax Court stated that it would have been warranted in holding that the trust was merely a shell, it rested its decision on the ground that, since it was the duty of the grantor to support and maintain his son, the income of the trust, created to satisfy the grantor's obligation in this regard, was taxable to the grantor.

We do not consider that the trust was created to satisfy the grantor's obligation to support his child. In 1943, when the trust was created, the grantor's son was ten years old. For that year, the grantor paid his divorced wife the sum of $115 per month for the son's support and education. During the same year, the income from the trust for the benefit of the son amounted to $12,959.54. The son also, as above stated, lived in his own home.

Because the stipulations in the property settlement between the grantor and his wife provided that the income from the trust to be established for the son was to be held by the trustee and applied by him to, and for, the child's maintenance and education, the Tax Court holds that this income was taxable to the grantor. It was taxable to the grantor, says the Tax Court, because it was income from a trust created to satisfy the grantor's legal obligation to support his son.

This contention of the government is based on the provisions in the separation agreement between the grantor and his wife, which were, subsequently, made a part of the decree of divorce, as well as included in, and made a part of, grantor's trust for his son. These provisions, as heretofore mentioned, stipulated that the net income from the stock placed in the trust "shall be held by the trustee and by him applied to and for the maintenance and education of said minor child, in addition to all other payments provided herein for him." The above mentioned provisions also stipulated that the grantor would pay to his wife the sum of $115 per month "for the support and education of said minor child" until he was twenty-one years of age, and afterward, in a reduced sum, which, however, would be necessary and proper until the son's education would be completed or terminated at his option.

In this case, then, the government relies on the Tax Court's holding that a man who is obligated to support his son cannot escape tax on his income by creating a trust, the income of which is used to satisfy such obligation of support; and this is the law.

However, we do not have a case before us in which the foregoing rule of law is applicable. For, here, the father did not attempt to escape the payment of tax on his income by creating a trust, the income of which was used, or to be used, to satisfy his obligation to support his son. This fact is apparent from the circumstances hereinafter set forth.

The four years from 1943 to 1946, inclusive, are those for which the government seeks to subject the grantor to payment of income tax on income from the trust for his son. At the beginning of these four years, the beneficiary was, as has been remarked, a little boy ten years old living with his mother in his own home which had been conveyed to him by his parents as part of their separation agreement. His father was paying, and was obligated by court decree to pay,

$115 per month for his support and education. For the four years in question, the father, then, was obligated to make monthly payments aggregating $5,520 for the child's support and education. In addition to these monthly payments, the income from the trust payable to the child for these four years, after deduction of income tax, amounted to $27,351.83. The father made payments to reduce the mortgage and to pay interest thereon and taxes. These payments were made from the income of the stock in the son's trust. Maintenance expenses of the house were also paid by the father; and all of these payments were charged, and, under the separation agreement, properly charged to the son's account. In addition, various building lots were purchased by the father and transferred to the trustee for his son.

The conclusion of the Tax Court that the trust was created to enable the grantor to satisfy his own obligations to support his son, rests upon the circumstance that the property settlement between the boy's parents provided, in two different paragraphs, that the income of the trust to be created would be applied to his support and education, and that the monthly payments of $115 would also be applied for the same purpose. It was mandatory, says the Tax Court, to use all the income of the trust, and all the monthly payments stipulated, for the support of the child; and since the father was obligated to support the child, all of the income of the trust "dedicated" to that purpose was taxable to the grantor.

It is incredible that $8,200 a year could possibly be used merely to support and educate, in a reasonable way, this little boy from a modest home, from the time he was ten years old until he was fourteen, especially when he himself owned the home in which he lived with his mother. It was not necessary to use the total income of the trust each year for the support and education of the child. Such an expenditure would have been utterly foolish and a deliberate waste and destruction of what belonged to the child. No court of equity would have permitted such folly; and no reasonable man acting as a trustee, confronted by the provisions of a trust, which were obviously the result of unwise phrasing, and plainly contrary to the intent of the grantor—the literal observance of which meant complete improvidence—would have wasted, by unnecessary expenditure, the surplus of the income over and above that which was necessary for the infant's support.

Neither the grantor nor the trustees—in actual practice—ever appeared to have considered that the total income of the trust was to be expended solely for the child's support and education. During the time in which no trustee was in existence, the grantor, as a constructive trustee, used the income from the stock to maintain and repair the minor's home and to pay real estate taxes thereon, as well as to reduce the mortgage indebtedness and purchase additional real estate for the child's benefit. It is to be emphasized, too, that the separation agreement provided for Mr. Hamiel's use of income to pay mortgage and tax indebtedness, and for maintenance of the home—a use of the word "maintenance" in a sense different from the usual meaning of "support." Everything that the grantor did, belied the intention, attributed to him by the government, that he intended the income from the trust to be entirely and currently consumed for the support of his young son.

It could not have been the intention of the boy's father that an average of more than eight thousand dollars a year was to be expended on the maintenance and education of his son from the age of ten to fourteen. It seems obvious, from an examination of the record in this case, that the monthly payments of $115 were for the son's support and education, and that the income of the trust was created for the son's benefit but was not necessarily to be used solely for his support—unless this court is bound to hold that the current expenditure of the entire income of the trust for the support of the child was absolutely required by the law. In deciding the case, the Tax Court said:

"We see no escape from the conclusion that there was income from the trust which under the terms of the trust was to be totally applied to the maintenance of [Mr. Hamiel's] minor child. There is no evidence of record that this income could not have been used by [Mr. Hamiel] in accordance with the trust agreement. His inaction or the lack of compulsion on him to act in this respect cannot excuse him."

We do not concur in this view. It was not necessary for the income of the trust to be entirely distributed each year for the support of the child. Where there remained a surplus of income of the trust—and, in this case, a very large surplus—over that needed for the support and education of the child, such surplus could have been held by the trustee for the infant's benefit. To expend the entire income of the child for his maintenance—so greatly in excess of his needs—could never have been contemplated by the grantor, a businessman who was primarily interested in his son's welfare and future security. Between the time the first trustee died, and the second trustee was appointed, Mr. Hamiel was engaged in carrying out the trust provisions. He was a constructive trustee. During all the time that he acted as a constructive trustee, Mr. Hamiel not only did not expend the entire income, but he deliberately conserved it for his son; and this indicated his intention as to the meaning of the trust indenture much more clearly than its inadequate phraseology.

"Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity and must be exercised in a reasonable manner." 3 Pomeroy's

253 F.2d—50½

Equity Jurisprudence (4th Ed.), page 2428.

In Bogert on the Law of Trusts and Trustees, Vol. 4, page 2349, it is stated:

"Where a trust is to provide support for a life cestui, and the income exceeds the needs of the cestui, or at least is greater than the amount which the trustee thinks it necessary to expend currently for the cestui, it becomes a question whether the settlor intended such balance to be the absolute property of the life cestui, payable to him during the trust at the discretion of the trustee or to his representative after his death, or whether the intent was that this surplus should be added to the capital of the trust. The former interpretation is the more general in the cases which have considered the point * * * but obviously either is a personally possible intent for the settlor to manifest."

In this case, there was a large surplus of income each year over that required for his support; and this surplus was properly accumulated from time to time for the benefit of the child.

Where the income of a trust may, in the discretion of another person, the trustee, or the grantor acting as trustee or co-trustee, be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, *the grantor is taxable only to the extent that such income is so applied or distributed.* Sec. 167 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. (I.R.C.1954) § 677.

It would seem to follow that where the income of a trust is not used, and is not intended by the grantor to be used to relieve the grantor from his legal obligations, he is not taxable upon such income. However, it is submitted by the government that the above mentioned section, in the language of the Treasury Regulations, "has no application when, under the terms of the trust, income is required to

be applied to the support or maintenance of a beneficiary whom the grantor is legally obligated to support." If there were no discretionary power in the trustee, there would be merit to this contention. But if it be considered that, although the income from the trust was to be used for the infant's support and maintenance, it was implicit that no more be used than was reasonable, in view of all the circumstances, then, under the authorities above cited, the expenditure of the surplus could not be held to be mandatory; and such surplus would be payable to the beneficiary at the discretion of the trustee. By such a construction, reasonableness prevails over technicality; the grantor's obvious intention prevails over phraseology; and the welfare of the child prevails over a senseless waste of his property. Nor is the purpose of the statute, by this reasonable construction, frustrated, or deprived of the effect intended by the legislative power. For the purpose of the provision of the Revenue Act here in question was to stop the evasion of taxes by means of trust provisions which allowed the use of trust income to the grantor for his benefit. Mairs v. Reynolds, 8 Cir., 120 F.2d 857, 860. As was said in Hopkins v. Commissioner, 6 Cir., 144 F.2d 683, 689, 158 A.L.R. 1301: "It has long been the rule that the income of a trust which is used for the support, maintenance and education of a settlor's minor children is taxable to the settlor, assuming that he was under legal or contractual obligation to support the beneficiaries. * * * Conversely, the rule has prevailed that unless the income is actually used to discharge the parental duty of support, it is not taxable to the settlor."

■ It may be that certain of the trust income was actually expended for the support, maintenance, and education of the minor beneficiary, in addition to the monthly payments made for his support and maintenance in accordance with the property settlement and decree of divorce. We do not know from the record before us. If such trust income was so

expended, the petitioner would be liable for income tax thereon.

In accordance with the foregoing, the case is remanded to the Tax Court for additional proof and for computation of any income tax due on account of trust income expended for the support of the minor beneficiary, and for further proceedings not inconsistent with this opinion.