**Michael P. GRACE, II, Plaintiff-Appellant,**

v.

**GRACE NATIONAL BANK OF NEW YORK et al., Defendants-Appellees.**

**No. 744, Docket 71-1908.**

United States Court of Appeals, Second Circuit.

Argued May 19, 1972.

Decided Aug. 1, 1972.

---

Lewis M. Dabney, Jr., New York City · (Liebman, Eulau, Robinson & Perlman, New York City, Herbert Robinson, New York City, of counsel), for plaintiff-appellant.

Paul W. Williams, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, Mathias E. Mone and Marvin S. Goldklang, New York City, of counsel), for defendants-appellees.

Before MOORE, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

In September of 1964 an agreement was reached whereby The Marine Mid-

land Trust Company of New York ("Marine Midland Trust") would acquire substantially all the business and assets of Grace National Bank of New York ("Grace Bank"). The stockholders of Grace Bank, including W. R. Grace & Co. ("W. R. Grace"), which owned over 80% of the capital stock of Grace Bank, and appellant, one of some 120 shareholders who owned the remainder, were to receive 360,000 shares of $5.50 convertible cumulative preferred stock of Marine Midland Corporation, owner of over 99% of the stock of Marine Midland Trust. At a special meeting of the stockholders of Grace Bank held on May 13, 1965, only appellant, who owned 143 shares, and one other stockholder, owner of 17 shares, voted against the proposed transaction; 8,776 minority held shares were voted in favor with 2,961 not voting. The sale was approved by the Banking Board of the State of New York, by the Superintendent of Banks of the State of New York, and by the Federal Reserve Board.

On August 4, 1965, appellant brought suit in the United States District Court for the Southern District of New York, alleging various wrongful acts, and seeking injunctive and declaratory relief, appointment of a receiver to vote the stock of W. R. Grace and damages. Jurisdiction was properly based on diversity of citizenship; alleged violations of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and of the National Bank Acts (12 U.S.C. §§ 181, 182 and 214), never seriously pursued, were apparently frivolous attempts to state federal question jurisdiction.

On August 17 Judge Ryan orally dismissed appellant's demands for injunc-

tive relief and the appointment of a receiver, but preserved the other issues raised for pretrial discovery. On August 18 the sale was consummated. Pursuant to their agreement, Grace Bank changed its name to Water Street National Bank, distributed the consideration received for the sale of its assets, and went into voluntary liquidation; Marine Midland Trust changed its name to Marine Midland Grace Trust Company of New York.

Upon completion of discovery, both parties cross-moved for summary judgment; appellees prevailed in a decision rendered on December 24, 1968 by Judge Tyler, wherein four of appellant's claims were dismissed outright. Of those claims appellant retains only one on appeal, that W. R. Grace so structured the tax consequences of the transaction as to breach its fiduciary duties as a controlling stockholder.

Judge Tyler also ruled that as to three issues appellant had presented sufficient documentary support to warrant a trial.[1] These remaining issues were all decided adversely to appellant by Judge Bonsal, 333 F.Supp. 1312, in a judgment entered on August 10, 1971. Appellant presented evidence on only one issue at trial, and urges here that it was sufficient to prove that W. R. Grace had wrongfully appropriated Grace National Bank's "reversion" of the name "Grace" in the banking business. We find no merit in either of appellant's claims and accordingly affirm the judgments below.[2]

Appellant's contention that W. R. Grace misappropriated a residual interest, whether or not characterized as a "reversion," in the name "Grace," arises

1. Contrary to appellant's suggestion that the court had somehow favored his claims, Judge Tyler, who denied appellant's motion for summary judgment, plainly did no more than decide that triable issues of fact existed.

2. Although our disposition of this appeal makes the issue unnecessary to decide, we

question the inclusion of Marine Midland Trust and Marine Midland Corporation among the defendants-appellees before this court when Judge Bonsal dismissed the action as to those two defendants without objection by appellant.

out of paragraph 23 [3] of the agreement of September 11, 1964 by which W. R. Grace and Grace Bank together conferred upon Marine Midland Trust the right to use the name "Grace" in its corporate title for a period of five years after which W. R. Grace could require that it be dropped. Since by assignment at the closing on August 18, 1965 W. R. Grace was given "all of Grace Bank's right, title and interest in and to all trademarks and trade names," the argument runs, W. R. Grace had contrived to preserve for itself alone the valuable right to use the name "Grace" in the banking business five years later without any compensation therefor to Grace Bank's minority shareholders; there is no claim that the minority shareholders were not fairly compensated for Marine Midland Trust's right to use the name during the five year period. As it eventuated, the latter company on its own initiative dropped "Grace" from its name in October, 1970.

Appellant's claim suffers from numerous defects,[4] but we are content to rest our affirmance on the failure to prove any damages. The expert testimony offered by appellant which assigned a value to the right to use the name "Grace" after five years was not credited. Judge Bonsal found that no value had in fact been shown for the name at the time Marine Midland Trust voluntarily discontinued its use. Indeed it seems unlikely that Marine Midland Trust would prematurely discard a valuable asset. The rejection of the opinion evidence was surely not clearly erroneous. Looking forward from the date agreement was reached in 1964, there was no indication that the right to use the name "Grace" in the banking business would have any value five years later. Since no value for the name was established by credible evidence, there were no damages to the minority shown as a result of the claimed "reversion."

The allegation that W. R. Grace as the controlling shareholder breached a fiduciary duty owed the minority shareholders by imposing a form on the transaction which unfairly placed the tax burden on the shoulders of the minority presupposes another method which would have yielded a more equitable distribution of that burden. It is true that an alternate method to effect the transaction did exist which

---

3. "23. Use of Grace Name.

"On the date of the Closing the name of the Trust Company will be changed to 'Marine Midland Grace Trust Company of New York.' Subject to the consummation of the transactions contemplated hereby, Grace Bank and Grace [W.R. Grace] hereby agree and consent that the Trust Company may use the name 'Grace' in the name of the Trust Company provided, however, that (a) this right is limited to the use of the name 'Grace' *per se* and this only as part of the name of the Trust Company and nothing herein shall be construed as granting to the Trust Company any rights whatever in any trade-marks or trade names of Grace or Grace Bank, whether registered or not, and (b) at any time five year's [sic] after the date of Closing, the Trust Company will change its name so as to eliminate 'Grace' from its name within six months after receiving from Grace a written request so to change its name."

4. Accepting what appellant did not trouble to prove at trial, namely that W.R. Grace in fact exercised its dominion and control in breach of a fiduciary duty and that Grace Bank in fact owned the right to use the name "Grace" in the banking business, and assuming the proposition (extremely doubtful in the light of the clearly inconsistent language in clause (a) of paragraph 23, n. 3, *supra*) that the assignment of Grace Bank's trademarks to W.R. Grace embraced the name "Grace," we are still unable to discern any language in paragraph 23 which contemplates the existence of a residual interest in the use of the name "Grace" in the banking business. That paragraph simply granted to Marine Midland Trust a limited right to use the name "Grace" subject to W.R. Grace's right after five years to withdraw its consent to further use of the name. This right to withdraw consent is not synonymous with an affirmative right to use the name "Grace" in the banking business. In fact it would appear the latter right was abandoned when Grace Bank changed its name and was liquidated.

might well have been preferred by some—but not necessarily all—of the minority shareholders, not because it would have significantly altered the ultimate tax liability of the minority but because it would have altered the timing of the tax. However, when, as here, a statutory plan is designed to offer significant tax benefits to a parent corporation while explicitly providing for the equitable treatment of minority shareholders in the subsidiary, we see no violation of essential fairness in allowing the parent to realize those benefits despite the existence of minority shareholders, however few, who for reasons of their own would prefer some other method to effect the transaction.

■ In this case the parties selected a purchase acquisition rather than a tax-free reorganization under § 368(a) (1)(A),[5] preferred by appellant. Ordinarily both the sale by Grace Bank of its assets in return for the preferred stock of Marine Midland Corporation, and the subsequent distribution of that stock in liquidation would be taxable transactions to Grace Bank and its shareholders respectively.[6] W. R. Grace, however, as a more than 80% shareholder who met all other requisite conditions, fell within the exception to the general rule provided by § 332 of the Code. It therefore received non-recognition treatment in connection with the liquidation distribution. As a consequence of the liquidation election Grace Bank was denied non-recognition of the gain on the sale of its assets to Marine Midland Trust,[7] and taxed on the long-term capital gain realized in the transaction.[8] Grace Bank then held the Marine Midland Corporation stock at a basis equal to its fair market value, and by the related provisions of § 334(b)(1) of the Code passed that basis on to W. R. Grace in the liquidation distribution. Were W. R. Grace then to dispose of its share of the distribution, it would of course incur no further tax. It is agreed that, given the low basis which W. R. Grace had in its Grace Bank stock, the net realizable value of the assets obtainable would have been substantially less in a § 368 tax-free reorganization.

Minority shareholders, by contrast, are not accorded the non-recognition treatment of § 332. Consequently for a period after 1954 if the amount received by such shareholders exceeded their stock basis, the gain would be recognized under §§ 1002 and 331(a) (1). By the Technical Amendments Act of 1958[9] Congress moved to remedy this inequality, adding § 337(d) to the Code "for the sole purpose of insuring that minority shareholders will be placed in the same position, after taxes, as if there had been no majority corporate shareholder and the . . . [liquidating] corporation had been able to utilize [the non-recognition provisions of] section 337." S.Rep.No.1983, 85th Cong., 2d Sess. 29–31 (1958), U.S.Code Cong. & Admin.News, p. 4819. This end was accomplished in § 337(d) by in effect allotting to the minority shareholders a pro rata share of the tax paid by the liquidating corporation on the sale of its assets as a tax credit against the tax payable by them in the liquidation distribution. The tax impact on the minority shareholders in this case, who upon completion of the transaction held their share of the Marine Midland Corporation stock at a basis equal to its then market value with all taxes paid, was substantially identical to the burden which would have been imposed in a § 368 reorganization—with one notable ex-

---

5. All statutory references are to the Internal Revenue Code of 1954.

6. §§ 1002 and 331(a) (1).

7. § 337(c) (2) excludes sales and exchanges by a subsidiary in connection with a § 332 liquidation from the ambit of the nonrecognition rule stated in § 337(a),

except for a narrow class not involved here.

8. The precise figures involved are not important to the proper disposition of the case.

9. Pub.L. No. 85–866, tit. I, § 19, 72 Stat. 1606.

ception. Under the non-taxable § 368 reorganization, minority shareholders, who would have held their share of the Marine Midland Corporation stock at a basis equal to the cost of their Grace Bank stock, could have deferred indefinitely the sale or exchange of that stock with the accompanying capital gains tax. As a general rule then, full tax liability once accepted is the same under either plan,[10] but the minority shareholders may not postpone acceptance of that liability under the plan selected. In the plan selected, of course, W. R. Grace received tax benefit unavailable to the minority. It does not follow, however, that it thereby incurred any liability to any dissenter among the minority.

A parent corporation should not be compelled to ignore the tax benefits afforded by § 332 when contemplating the liquidation of a subsidiary whenever any minority shareholder in the subsidiary would prefer an alternate method, not to decrease his tax burden, but simply to change its timing, especially where most minority shareholders prefer the method selected. Such a rule would plainly frustrate the Congressional purpose embodied in the statutory scheme outlined above; § 332 would become a dead letter. New York has an interest in maintaining a high standard of conduct for corporate fiduciaries. *See, e. g.,* Perlman v. Feldman, 219 F. 2d 173, 176 (2d Cir. 1955).[11] No violation of such a standard is shown here. Where, as here, the majority shareholder has exercised his control with the full concurrence of the overwhelming majority of the minority shareholders, we see no violation of fundamental fairness in selecting a course of conduct which took maximum advantage of the tax laws without unduly disadvantaging any minority shareholder. *Cf.* Case v. New York Central R. R., 15 N.Y.2d 150, 256 N.Y.S.2d 607, 204 N.E.2d 643 (1965).

Affirmed.

---

10. Appellant mistakenly suggests that those minority shareholders with a high basis in their Grace Bank stock will be deprived of full utilization of their § 337(d) tax credit; but it may in fact be applied against other income of the stockholders or obtained as a refund. *See* § 337(d) (2) and Treas.Reg. § 1.337-5(d) (1961).

11. Since Grace Bank, a banking association formed under the laws of the United States, had its principal place of business at 7 Hanover Square, New York, N.Y., New York law would define W.R. Grace's fiduciary obligation in this diversity action. Perlman v. Feldman, 219 F.2d at 175.